appearing for the petitioner Jack Maksoudi. In this case, Mr. Maksoudi's only witness, his father, who was the most essential witness, was denied his right to an interpreter. Based on that, he could not explain to the judge the problems, the hardships that he would have, he and his wife would have, if his son would be deported from the United States. Was an interpreter requested? There was no interpreter requested by the attorney. The attorney should have requested an interpreter, but at the same time, there's a right to have an interpreter, and the judge made findings all the way from the beginning of the case through the decision. What's the best case authority for the proposition that a judge is required to sua sponte upon an interpreter for a witness? There is the Board of Immigration Appeals decision, a matter of Thomas, which is in the brief, which is in my brief. Exactly what are the facts of that case, and what did it hold? That an individual has the right to an interpreter. You say an individual. What does that mean? A witness? A person under suspicion of violating the immigration laws who's about to get thrown out of the country? What does it mean, an individual in that case? In that case, I believe it was the respondent themselves, but it really doesn't matter because the idea is to present evidence. You have the right to present evidence. Without an interpreter, whether it's for a witness or for the respondent, the petitioner themselves, that evidence does not go to the judge. Did anybody in this case ever ask for an interpreter, a continuance for an interpreter or anything? No. The attorney, the former attorney did not ask for the interpreter. So what you're saying is somebody can show up, announce ready after these things have been set for months, walk in with a witness and announce that this person speaks some arcane dialect of Chinese, and that's all you have to do? You don't even have to ask for an interpreter, and it's the judge's responsibility to produce out of thin air with no preparation an interpreter for the witness? The court has access to a great number of interpreters who are in different courts during that day. The judge could have called, I believe it's Berlitz and other agencies that do interpreting. You can imagine how many interpreters are used at the immigration court, especially in Los Angeles. Isn't, shouldn't this be a, a respondent is one thing, but a respondent's witness seems to me to be something else. And isn't there some kind of responsibility that's put on the respondent and the respondent's lawyer if they know that the witness can't speak English, to show up with an interpreter? Or before the hearing starts at some appropriate time make a request for that? There can be. There was no discussion at the preliminary hearing about witnesses and languages. It certainly would have been appropriate for the attorney to have asked. Whose fault is that? Well, I don't know if there's really a fault because we're talking about the denial of a right to present evidence. I'm not really sure that there's a fault involved. I think we have to balance the significant right that was denied Mr. Maksudian by having his only witness, his father, being unable to communicate. Why do you say that is the only witness? That was the only witness he presented. Could Maksudian testify to the father's necessity of Maksudian's help? I'm sorry? Couldn't the respondent, Mr. Maksudian, testify to the way he was supporting his father? Yes, he could have, and he did to some extent. Was there any offer of proof by Mr. Maksudian as to what his father would have testified to if there were an interpreter to allow the court below to judge the importance of the father's testimony and to allow us to judge whether that testimony were crucial? Mr. Maksudian did testify to some extent about the part of the court. Was there an offer of proof as to what Maksudian's father would say? And if so, what was it? No, there was no offer of proof. That's the – there were different options that could have – that were available to Mr. Maksudian and his attorney. But we're now in a situation where those couple of options were not utilized by the attorney. And so we have an individual who, after being here for over 20 years in this country, who had a very viable case, was not able to present that evidence. And by that evidence, I mean, for instance, his father's health condition. His father couldn't – in the government's brief, they mentioned that the health condition of the father was one issue that was not discussed or testified to by Mr. Maksudian, that his father – his father did know most about his own health condition, and that was something he could not communicate. And health condition is a very important factor when we're talking about hardship. Aren't the only cases that require an interpreter those cases where the interpreter must be provided for the respondent so that not only can he testify in his own behalf, but also understand the nature of the proceedings? There's two reasons why he should have a translator, not just as testimonial, because he may not be able to testify on that particular issue. He must have a translator so he can understand what's going on in his proceeding, right? Those are the only cases I – is there a case that says that the immigration service or the independent – pardon me, the immigration judge has a statutory or common law or decisional obligation to provide a translator at no expense to the respondent? I haven't found one, but I would have to look. I would ask for that opportunity to try to find a case. But even though – even though the more typical case, published decision, or maybe the only published decisions have to do with a respondent's right for an interpreter, the right for a witness to be able to be understood and to testify should be also a right, a due process right. Because if witnesses – if we're saying that a witness cannot testify in court simply because they have a right to do so, that's not the case. If a witness cannot testify in court simply because there's no interpreter provided by the court, just think of all the individuals who would be denied an opportunity to present evidence, because that may be the only evidence they have. You know, counsel, I have to disagree with you. This is – if there's any fault here, it's the fault of the lawyer down at the administrative level. I cannot believe that a lawyer would show up with a witness who can't speak English and then just sort of throw up his hands, not even put into the record an offer of proof, not ask for a continuance, not ask for an interpreter. Just obviously take somebody's money and go home. The attorney should have absolutely – I think there are two obligations, though. I do think that the attorney should have asked for the postponement, asked for an interpreter beforehand. But the judge also had the obligation, because once the judge understood, as he did at the beginning of the testimony, the judge himself said that the witness was not completely fluent in English. He said that at the very beginning. The option would have been, for instance, let's say a one-day postponement. Just come back the next day or come back in the afternoon. That would have then allowed Mr. Maksudi to have his rights protected. There would not have been a long delay. There were other options that the judge could have – could have accomplished. Kennedy. Is that a corresponding obligation on the immigration judge? And if so, what's your case that says so? I don't know of any cases, but in fairness, to have a full and fair hearing, the respondent should be allowed to have witnesses testify in the language that they're able to speak. You have a minute and a half. Would you like to save that for rebuttal or continue? Yes. Okay. We'll hear from the government. Thank you very much. May it please the Court. My name is Robin Bly, and I represent the Attorney General in this matter. The Petitioner was given the opportunity to get everything ready for this hearing. He was given a 15-month continuance to get his documents ready, to prepare his witness. I mean, he would have been in the best position to know whether his father could speak English or not. His father was able to answer some of the questions, though not necessarily in, you know, the most correct English. But he was able to answer the questions. And there were language difficulties. But the only question he really didn't seem to be able to answer had to do with what exactly his health problem was and who was taking care of it. And by that I mean who was paying for his treatment. And his son was able to get up afterwards and explain who was paying for the treatment, or to the best that he could, because it wasn't they had no name or they referred to some local Orange County group or organization that was covering this. Well, wasn't there a finding by the IJ that the Petitioner's father does not depend on his son to pay for health care? Well, Your Honor, other than the testimony, there was nothing to indicate, no documents showing that he actually took care of his father. There were no check stubs. There were no accounts or anything showing that he was handling these things for his father, paying the mortgage. And the IJ made that finding? Yes. So, I mean, he was given the opportunity. And as has been noted, he at no time was an interpreter asked for or a continuance asked for. His attorney basically said, okay, I mean, I think he thought he got all he could get out of the Petitioner's father. And he had had the opportunity to have Petitioner on the stand. He asked him all the questions he wanted to, presumably. There was nothing to indicate that he was cut short or anything like that. Am I correctly distilling your argument? Do I hear you saying that even if we were to assume there was some right here, it was harmless in any event, given this record? Your Honor, it would be harmless. The respondent indicated he does not have the means or money to provide for medical help, assistance for his father, that permanently a government or a quasi-private or charitable hospital is providing free of charge medical treatment for his father. So the respondent himself says, I'm not having to pay for anything. Somebody else is doing it for free. Is that right? That's what I understand from the record, Your Honor. Plus, his health was one thing to be considered. But there were other factors in determining whether he met the extreme and unusual hardship element. And the judge went through those as well, finding that the Petitioner had not been involved in volunteer services, you know, didn't he went to church, but he couldn't name the church he went to. I mean, he went through the various different things that are to be considered when rendering this determination and found that Petitioner didn't warrant a favorable exercise of discretion. In the abstract, is there any – is there a case or a rule or a regulation anywhere that talks about the Court's responsibility, the immigration judge's responsibility to provide sua sponte, an interpreter, for a witness who's having problems? Your Honor, I am not aware of one. And I should say that counsel seems to make it appear as if they could have just called the Berlitz interpreter right then and there and that the Berlitz interpreter could not. That's not how the system works. They have to plan for these things. The interpreters are not on call or just standing there waiting to get a call from the immigration court. These things need to be planned months in advance. Weeks in advance for there to be an interpreter available. Turning to another issue, if we get by the interpreter matter, do you see anything wrong in the I.J. finding that he hadn't proved 10-year physical presence? Your Honor, he had to show – no. He had to show that he had been in the country 10 years from the service of the notice to appear, which was – And the I.J. discredited his testimony that he had been here for 10 years. Well – As self-serving. Yes. Is all testimony adduced by any litigant self-serving? It would be a blunder to do otherwise, right? Yes. Yes. I mean – So now, next question is this. Were there any credibility findings adverse to McSoodian which would sustain a disdain of McSoodian's testimony by the I.J. on the basis that it was self-serving? No, Your Honor. No. What we have here is one year, I think 1986, when he didn't have something, because in 1987, he had a bank account, and some other documentary evidence also in 1988. He had time before that. He had documents before that, and a lot of documents, including W-2s after that. So what – why should we not say that the I.J. erred in finding that he didn't carry the burden of proof on his 10-year presence, unless you can point to some credibility findings which would allow us to ratify the I.J.'s disdain of his own testimony? No, I can't point to anything like that. But even if you do find that he had the requisite 10 years, the judge, as I pointed out in our brief, did deny it on discretionary grounds. Right. So that would render him ineligible. And your view is that so long as he denies on discretionary grounds, including the fact that he wasn't a member of the Little League or Parent-Teachers Association or anything else that the I.J. may think a person should do after 10 years, we have no jurisdiction to review that? That's correct. This Court has said that it has no jurisdiction to review that – that prong of the cancellation of removal. Okay. As we've been – as we've indicated in our brief, there was nothing to indicate what his father's illness was. He had 15 years of – 15, I'm sorry. 15 months to get some sort of documentation about his father's illness or anything that could have been presented as well to explain what his father was actually suffering from. And we would say that the Petitioner suffered no prejudice and that the Court should dismiss his petition. Thank you, counsel. Thanks. What about the government's position that we can't review the discretionary denial of cancellation? Well, this Court has already decided the opposite on several cases. It's – it has to do with the issue that's being brought up. If an individual is saying that the hardship issue was wrongly decided by the Board of Immigration Appeals, then this Court does not have jurisdiction, because that is the discretionary judgment. But if you're dealing with purely legal issues or constitutional issues, it doesn't matter if it's in the hardship area. In fact, there was a case this Court decided on, on the definition of a child. I think it's Romero. It's in the briefs. I believe it's the Romero case, or either Romero or Monteiro. I'm sorry. But one or the other where the question was the definition of a child for hardship purposes. And this Court found that because it was a purely legal issue, even though it dealt with the hardship issue of cancellation of removal, that this Court had the power and the jurisdiction to decide it. So clearly you have jurisdiction over this case, because we're not contending that the hardship element was wrongly decided by the judge, but instead we're saying that there were rights denied of the Respondent. And that is not a discretionary decision. So jurisdiction is not a question for this Court. The prejudice, if this Court does find that witnesses have the right to decide to interpreters and that the judge should have sui espante moved for an interpreter. By the way, I practice immigration law every day in Los Angeles and have for about 30 years, and I know that there are interpreters that often go from one courtroom to another in a variety of languages, and that even though the judge might want to spend a few weeks settling the appointments of the interpreters, interpreters are given to the Court either the same day or within a day, so it's very easy to do in Los Angeles. Have you talked to the lawyer who handled this case before the immigration judge? No, I haven't. If the Court does find that the judge did make an error, had a duty and did make an error, the prejudice is, follows a long line of cases, recent cases from this Court that talk about an immigration judge's conduct being the prejudice by itself. If the immigration judge had a duty and didn't fulfill it, that is the potential difference in the outcome of the case. But, counsel, even if we agree with you that translators should have been presented, even if we agree with you that there was 10 years' continuous presence here, the I.J. listed about 10 reasons at AR 52-53 why the I.J. was exercising discretionary grounds to deny the relief sought by your client, including he overstayed his initial visa, he is healthy without medical problems in the prime of adulthood and workability, he has no roots or ties to the United States, no community service clubs, society groups or organizations, owns no property or businesses, speaks English, Armenian and Arabic, he never did a United States military service, he has some traffic violations, he only has two tax returns, and his work skills and watch repair are transferable. Isn't that a sufficient ground for discretionary denial which divests us of jurisdiction to review? No, because we're not contending that the hardship was wrongly decided by the judge. We're not getting to that issue. We can't get to that issue because without the witness's testimony, we don't know what other evidence would have come in front of the judge on the hardship. Was he supporting his father economically? Yes. He was the main support. How? By giving him his mother and father the majority of the money. He did have two siblings also in the Los Angeles area, but explained the reasons why they couldn't participate economically much. His sister had a child and was a single mom, and his brother was working part-time, so the testimony is that he gave the great majority of money for the support of his non-working parents, his elderly non-working parents. Thank you, counsel.  The case is argued as ordered and submitted. Casares and Estrada are both submitted on the briefs. We'll call Imperial Corporation of America v. Carmel Partners. Thank you.
judges: Rawlinson, Trott, Bea